UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------------x

COMPREHENSIVE COMMUNITY DEVELOPMENT CORP. d/b/a SOUNDVIEW HEALTHCARE NETWORK, THE BOARD OF DIRECTORS OF COMPREHENSIVE COMMUNITY DEVELOPMENT CORP. d/b/a SOUNDVIEW HEALTHCARE NETWORK, CHARLOTTE MCDUFFIE, individually and as Vice Chairperson of THE BOARD OF DIRECTORS OF COMPREHENSIVE COMMUNITY DEVELOPMENT CORP. d/b/a SOUNDVIEW HEALTHCARE NETWORK, CONSTANCE BRUNO, individually and as Member of the Board of Directors of THE BOARD OF DIRECTORS OF COMPREHENSIVE COMMUNITY DEVELOPMENT CORP. d/b/a SOUNDVIEW HEALTHCARE NETWORK,  and DR. MICHAEL OSBORNE, individually and as an employee of COMPREHENSIVE COMMUNITY DEVELOPMENT CORP. d/b/a SOUNDVIEW HEALTHCARE NETWORK,

**Plaintiffs,**

**– against –**

KATHLEEN SIBELIUS, both individually and as Secretary of the U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES (DHHS), JAMES MACRAE, both individually and as associate administrator of the DHHS HEALTH RESOURCES SERVICES ADMINISTRATION BUREAU OF PRIMARY CARE) SUGANTHI WALTER, both individually and as public health analyst for HEALTH RESOURCES AND SERVICES ADMINISTRATION, BRIAN FELDMAN, both individually and as Grant Management Specialists for Department of HEALTH RESOURCES AND SERVICES ADMINISTRATION, GINA CAPRA, both individually and as Director of the Eastern division bureau of primary health care for Department of HEALTH RESOURCES AND SERVICES ADMINISTRATION, LYNN VAN PELT, both individually and as Deputy Director for Northeastern division for HEALTH RESOURCES AND SERVICES ADMINISTRATION, SHERRY ANGWAFO, both individually and as Financial Analyst Team Leader of    HEALTH    RESOURCES    AND    SERVICES ADMINISTRATION, OFAM, AND DFI, CHARLENE FLESZAR, both individually and as Legal Counsel for OMIG, MATTHEW BABCOCK, both individually and as assistant Medicaid inspector general for OMIG, STEVEN AUERBACH, individually and as Captain of NATIONAL HEALTH SERVICE CORPS, PALOMA HERNANDEZ, both individually and on behalf of  URBAN HEALTH PLAN, INC.,

**Defendants.**

COMPLAINT

12 CV 0776

"ECF CASE"

(J. Engelmayer)

The Plaintiffs herein, COMPREHENSIVE COMMUNITY DEVELOPMENT CORP.

d/b/a SOUNDVIEW HEALTHCARE NETWORK, THE BOARD OF DIRECTORS OF

COMPREHENSIVE COMMUNITY DEVELOPMENT CORP. d/b/a SOUNDVIEW HEALTHCARE NETWORK, CHARLOTTE MCDUFFIE, individually and as Vice Chairperson of THE BOARD OF DIRECTORS OF COMPREHENSIVE COMMUNITY DEVELOPMENT CORP. d/b/a SOUNDVIEW HEALTHCARE NETWORK, DR. MICHAEL OSBORNE, individually and as an employee of COMPREHENSIVE COMMUNITY DEVELOPMENT CORP. d/b/a SOUNDVIEW HEALTHCARE NETWORK, by and through their attorneys, CONDE & GLASER, ESQS., as and for a complaint against the Defendants, states and alleges the following upon information and belief:

## I. PRELIMINARY STATEMENT

1.     Each of the within Plaintiffs seeks a Preliminary Injunction and Temporary Restraining Order to prevent the Defendants, and specifically the U.S. Department of Health and Human Services Health Resources and Services Administration (HRSA) and its employees, from terminating a grant provided under 42 USC 254(b), (§330 of the Public Health Service Act); a FTCA grant administered by HRSA for medical malpractice insurance; in addition to monetary damages.

2.     The impact of losing the §330 grant, on a monetary basis is estimated to be $15 million and includes HRSA related funds of $1.8 million (base funding); $1.5 million estimated medical malpractice coverage (as part of a grant administered under the Federal Tort Claims Act); $1.5 million in Demand for Services and Capital Improvement grants; and the impact on gross revenue (which comprises at least $8 million in Medicaid and Medicare funding due to enhanced reimbursement rates provided under §330 for Federally Qualified Health Center Status). The elimination of these grants will effectively cause the shutdown of the Soundview HealthCare Network,

four health care facilities serving over 20,000 patients annually within Bronx zip codes (10453, 10466, 10467, 10472 and 10473).   More than 76% of Soundview's patients reside within these zip codes in the immediate vicinity and its geographic location on a peninsula.  The inability to receive further treatment in that community presents a two-fare transportation challenge to those who reside in that area and use public transportation.

3.      It is respectfully submitted that the actions of the Defendants in actively soliciting the winning bidder to compete for the grant, creating a fraudulent and sham "objective review process" purposely designed to deny Soundview of a grant opportunity it had been receiving for over 30 years, abrogating already existing doctor-patient relationships, choosing a provider from outside of the service area for which the grant was designated, and various other actions taken to specifically prejudice the Soundview Healthcare Network due to its associations with its founder and previous Chief Executive Office (CEO), Pedro Espada, violated each of the Plaintiffs' due process rights, were arbitrary and capricious, and purposely designed to thwart the Plaintiffs' rights under the U.S. Constitution – specifically, their First Amendment rights to free speech and association, their Fifth Amendment and Fourteenth Amendment right to due process of law, and their  Fourteenth Amendment right to equal protection of the laws.

## II. <u>JURISDICTION</u>

4.      Jurisdiction is invoked pursuant to Administrative Procedure Act (APA), 5 U.S.C. §702.

5.      Jurisdiction is invoked pursuant to Administrative Procedure Act (APA), 5 U.S.C. §706.

6.    Jurisdiction is invoked pursuant to the U.S. Code, 28 U.S.C., Section §1331.

7.    Jurisdiction is invoked pursuant to 28 U.S.C. 1367, as pendent jurisdiction for a New York State action.

8.    Jurisdiction is invoked pursuant to 42 U.S.C. Sec. 1983, in the assessment of claims against state agents acting under "color of law."

9.    Jurisdiction is invoked under the decision of the U.S. Supreme Court in Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971).

## III. THE PARTIES

### A.    The Plaintiffs

10.    COMPREHENSIVE COMMUNITY DEVELOPMENT CORP. d/b/a SOUNDVIEW HEALTHCARE NETWORK (hereinafter "Soundview") is a Federally Qualified Health Center (FQHC), whose four locations have treated the medically underserved population[1] of Soundview in the Bronx since 1978.  Soundview is a 501(c)(3) Not For Profit Corporation,  with the Soundview Health Center being the largest of the four centers and the only Federally Qualified Health Center geographically located on the Soundview peninsula of the Bronx, an urban neighborhood dominated by nine low income public housing projects. Seventy-six percent of Soundview's patients reside within the zip codes 10453, 10466, 10467, 10472 and 10473.

---

[1]  TITLE 42 - THE PUBLIC HEALTH LAW §254b (3), defines "medically underserved population" as a population of an urban or rural area designated by the Secretary of the Department of Health and Human Services as an area with a shortage of personal health services or a population or group designated by the Secretary as having a shortage of such services. The Soundview target area has a population of approximately 283,944.

11.     As a Federally Qualified Health Center, Soundview relies on federal grant funding opportunities through §330 of the Public Health Service Act.  As a Federally Qualified Health Center, Soundview presently receives numerous public benefits, such as, enhanced Medicare and Medicaid reimbursements, Medical Malpractice insurance coverage through the Federal Tort Claims Act, access to doctors associated with the National Health Service Corp., eligibility to purchase prescription and non-prescription medications for outpatients at a reduced cost and eligibility to various other grants and programs.  Over the past thirty-three years, these numerous federal benefits have enabled Soundview to provide quality care for over 20,000 low income patients annually, many of which have no health insurance whatsoever or receive Medicaid/Medicare benefits.  The programs at Soundview are specifically designed to promote wellness through the provision of dietary counseling,  family medical services, mental health services, dentistry, OBGYN services, podiatry, cardiology, pediatric care, gastroenterology, hypertension and diabetic services, laboratory testing and health fairs.[2]

---

[2] A 2010 study conducted by the University of Wisconsin Population Health Institute rating the health of counties in the United States reported that Bronx County is the "unhealthiest county" of all 62 counties in New York State.  See  County Health Rankings: Mobilizing Action Toward Community Health.

12.     The Board of Directors of Soundview is comprised of community residents, the majority of which are registered patients of the health center.  The governing board ensures that the center is community based and responsive to the community's health care needs.  Its Vice-Chairperson, Plaintiff, CHARLOTTE MCDUFFIE, is both a community resident and a patient of the facility.  Plaintiff, CONSTANCE BRUNO, is a Soundview Board Member and former Chairperson of the Board  who is at risk of losing doctors if Soundview loses its funding and is forced to close.

13.     Soundview Healthcare Network also employees over one hundred staff members.  DR. MICHAEL OSBORNE is a dentist whose practice focuses on providing dental services to the patients of low-income communities. He left a dental practice in the Brownsville section of Brooklyn to help the Soundview community with its dental needs. He stands to lose his employment if Soundview loses its funding and is forced to close.

**B.     The Defendants/Respondents**

14.     KATHLEEN SIBELIUS, is the Secretary of the U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, (hereinafter, "DHHS"), which is a United States government agency which is the principle agency "for protecting the health of all Americans."

15.     The HEALTH RESOURCES AND SERVICES ADMINISTRATION (hereinafter, "HRSA") is an administrative arm of the DHHS, which, among other things, administers funds for applicants for Federal grants.

16.     JAMES MACRAE is the Associate Administrator of HRSA's Bureau of Primary Care – again, again, an administrative arm of DHHS.  SUGANTHI WALTER, BRIAN FELDMAN, GINA CAPRA, LYNN VAN PELT, and SHERRY ANGWAFO are also employees of DHHS, within the HRSA unit.MATTHEW BABOCK is the Assistant Medicaid Inspector General for the OFFICE OF THE MEDICAID INSPECTOR GENERAL, (hereinafter, "OMIG"), which is a New York State Agency established by statute as an independent entity within the New York State Department of Health to improve and preserve the integrity of the Medicaid program by conducting and coordinating fraud, waste and abuse control activities for all State agencies responsible for services funded by Medicaid.

17.     STEVEN AUERBACH is the Captain of NATIONAL HEALTH SERVICES CORPS. (hereinafter, "NHSC"), which is also an administrative arm of the DHHS that provides scholarships and loans to Doctors who practice medicine in medically underserved populations.

18.     PALOMA HERNANDEZ is the President and CEO of URBAN HEALTH PLAN, INC., which is a community health provider in the Hunts Point, Fairmont/Claremont Village, North Corona, Rainey Park, Freeman Street and Kips Bay sections of the Bronx, servicing 48,000 patients.  In the past, Urban Health Plan, Inc. has been a recipient of HRSA grants for the service area covering another section of the Bronx.

19.     Paloma Hernandez serves as a Board Member for Region II of the National Association of Community Health Centers (hereinafter "NACHC.")   NACHC is an organization that addresses the widespread lack of access to basic health care.

20.     Paloma Hernandez also serves as the President of Community Health Care Association of New York State (hereinafter  "CHCANYS"). CHCANYS's  mission is to ensure that all New Yorkers, including those who are medically underserved, have continuous access to high quality community-based health care services including a

primary care home. To do this, CHCANYS serves as the voice of community health centers as leading providers of primary health care in New York State.

21.     In these capacities, Ms. Hernandez was contacted to assist Soundview to help maintain certain funding, including the §330 grant, prior to the announcement of the service area competition.

22.     In 2011, for the first time in thirty years, Urban Health Plan, Inc. competed for a Service Area Grant in the Soundview area, despite the fact that Urban Health Plan, Inc. maintained no Health Center within the service area.

23.     Upon information and belief, HRSA solicited Urban Health Plan and extended its application deadline for said organization and ultimately awarded said organization the grant that is the subject of this action.

24.     HRSA requires that health centers make efforts to establish and maintain collaborative relationships with other health care centers.

25.     As part of the competing application, HRSA requires that health centers secure letters of support from existing Federally Qualified Health Centers in the area. Ms. Hernandez provided a letter of support on behalf of Soundview to receive the §330 grant, but then applied for the exact grant as Soundview's competitor.

26.     After a letter of support was provided for Soundview, Ms. Hernandez failed to communicate that URBAN HEALTH PLAN INC. was competing for the same service area grant.

27.     Upon information and belief, Ms. Hernandez abused her position(s) and acted in concert with federal government actors in order to deprive Soundview of a grant opportunity.  She also used lobbyists and political connections in the attempt to secure said grant.

IV.     **FACTS AND PROCEDURAL HISTORY**

28.     In June 2009, Pedro Espada, the founder and former CEO of Soundview, while a New York State Senator, led a revolt in the NY State Senate, which has commonly come to be known as "the coup," in when he switched his support from the Democratic majority leader to the Republican majority leader.  Without discussing the entire history of "the coup" and the outcome, the New York State Office of Medicaid Inspector General (OMIG) started an investigation into Soundview's finances during that precise time period.

29.     In November 2009, the Office of the Attorney General's Medicaid Fraud Control Unit ordered Soundview to provide over 250 original medical records for Medicaid chart review. To this date, these original charts have not been returned to Soundview, nor has Soundview ever learned the outcome of the review.

30.     On April 16, 2010, Soundview received a notice for detailed financial information dating back to 2005 from HRSA's Division of Financial Integrity (DFI) who serves as HRSA's focal point for coordinating financial audits of grantees and conducting reviews related to the financial integrity of its grantees.  DFI was asked to look into issues surrounding the recent negative media attention the organization had experienced and how those issues might impact Soundview's financial management of HRSA funds. Documents and records were requested for events pertaining to a time frame dating back more than 5 years. It is to be noted that Soundview had ***no deficits*** during its 33 year history, despite these ongoing audits.

31.    On April 20, 2010, the NYS Attorney General filed a civil lawsuit against Soundview's President and CEO, Pedro Espada, Jr., Chief Financial Officer, Kenneth Brennan and Soundview's then-existing Board of Directors.  Thereafter, the FBI raided the facility, confiscating 30 boxes of original documents, files and checks. This was unduly disruptive to Soundview's operations and fiscal management as many of the items were fiscal records, original checks and payable related items.  These documents were also requested by OMIG and HRSA. Soundview maintained constant contact with its HRSA project officer during this time and commenced several administrative processes to clarify erroneous or misleading government statements made to the media.

32.    On January 12, 2011, HRSA'S Division of Financial Integrity's office notified Soundview that it had requested the NYS Department of Health and Human Services Office of Inspector General's examination of grant expenditures to for the purpose of determining Soundview's financial viability. An OIG Audit Manager and Senior Auditor, form the OIG Albany office commenced an entrance exam on January 20, 2011.  Soundview has not received the results of that audit.  It is further respectfully submitted that had Soundview attained any knowledge of the OIG's findings, Soundview could have reached out to HRSA for technical assistance, as grantees are normally encouraged to interface with their project officers for the purpose of improving programmatic and fiscal operations. Soundview has not received any letter determining that they lack financial integrity.

33.    In April 2011, FTCA made a site visit to verify the implementation of the quality improvement/quality assurance process, credentialing, privileging processes and risk management processes pursuant to the provision of 2011 deeming status for Soundview's malpractice insurance.   During this time, FTCA confirmed that Soundview had no professional liability claims or allegations filed against the Health Center within the last 5 years, and, upon information and belief, there has never been such a claim in Soundview's history.

34.    In May 2011, the Office of Medicaid Inspector General (OMIG) Bureau of Compliance, an independent office within the NYSDOH conducted an Effectiveness Review.  The review findings were published via a press release published August 10, 2011, announcing that a notice of proposed agency action to exclude Soundview from the Medicaid Program for three years as a result of having no compliance program. Simultaneously to OMIG'S release, the DOH issued its own press release alerting the public that it had cancelled the Soundview Medicaid contract without cause. These actions resulted in media fallout and reassignment of Medicaid managed care patients being reassigned to other providers who were not readily accessible.

35.     In a letter dated July 20, 2011, the National Health Service Corps. advised Soundview that its candidates for doctor would no longer be assigned to the Soundview facilities in light of audits and/or reviews of compliance issues presently being undertaken by the Department of Health and Human Services Office of the Inspector General, HRSA and the Medicaid Fraud Control Unit.   This was a critical blow for Soundview, since many minority provider recruitments and retention plans are supported by NHSC programs.   It also impacted patient care as it resulted in longer waits for appointments since Soundview could not recruit candidates for OBGYN and prenatal care delivery.

36.     On September 2, 2011, HRSA issued a notification of discontinuation of §330 funding as a result of the continued history of non-compliance with statutory and regulatory Health Center requirements.   Within the same letter, a competition for the award was announced:

> HRSA has made the decision to discontinue CCDC's Health Center Program grant.   Consistent with this action and to ensure continuity of care for the patient population in the service area, HRSA has announced a competition to identify an organization that can carry out a service delivery program consistent with Federal Health Center Reporting requirements. HRSA is seeking to expedite the awarding of a new grant and, as a result, your project period may be shortened.

37.     It is submitted to this Court that the mere announcement of this competition was outside of the normal HRSA process for awarding the §330 grant. Soundview was previously awarded the §330 grant in five-year intervals, and it is questionable what prompted the decision to discontinue the grant, the "shorten[ing]" of the project and the announcement of a competition to "identify" an organization to deliver said services for the Soundview community.

38.    The notice of discontinuation of funding was rescinded by HRSA when Soundview's previous counsel received a notice from the Board of Appeals.  The Board of Appeals asked HRSA to clarify their September 2, 2011 letter, as to whether it constituted a final decision or termination notice, either of which would have provided Soundview the right to appeal. HRSA responded by noting later that this letter was not a final decision or termination and that it would notify Soundview and provide a 30 day notice should this be the case.  As such, the grant would continue through the end of its project period January 31, 2012.   Future funding would proceed with a competing application process for the new project period effective February 01, 2012 and said grant award would be subject to HRSA's "objective review process" for the grantee.

39.    At a Community Health Care Association of NYS annual conference held in Saratoga Springs, NY, the Soundview Board Chairperson, Monica Harris-Coleman and the current interim Principal Investigator, Julia Tsien, had a conversation with Defendant Steven Auerbach from the National Health Service Corp.   Ms. Tsien specifically asked Mr. Auerbach what Soundview needed to do to regain their NHSC status.  Mr. Auerbach replied "off the record" and then said Pedro Espada Jr. needs to step down and things could be different.  Mr. Auerbach's comments were made directly in front of Ms. Julia Tsien.

A.     The "Macrae letter"

40.     On January 12, 2012, James Macrae, as Associate Administrator of HRSA's Bureau of Primary Care, stated in a letter incorrectly addressed to Pedro Espada, as Soundview's Chief Executive Order, that Soundview's purported "score" in an "objective review process" was "not sufficiently high enough in the competitive process to receive funding" [of the §330 grant].  See Macrae Letter, annexed hereto as Exhibit B.  The Macrae letter, further, specifically indicated that the finding within the purported "objective review process" was not subject to appeal – specifically because it was a pre-award decision.  Additionally, within the purported "grading" and an analysis of Soundview's strengths and weaknesses, it was found that Soundview did not maintain New York State Medicaid funding or malpractice coverage for its patients. These findings, among other less noteworthy ones, were palpably incorrect.

41.     Furthermore, it is not at all clear whether any analysis of existing doctor-patient relationships were examined in the grading of Soundview.  That is, the actual tearing away of patients from Soundview, and transferring of such patients to another community in another section of the Bronx would seemingly be an enormous consideration for any purported "objective" review, while the continuation of such service within the community where the patients are serviced would appear to be an important factor for continuing a grant ***within the service area.***

B.    Prelude to the January 25 Conference Call

42.    Attorney for the Plaintiffs attempted in various ways to initiate a discussion with top HRSA personnel weeks before the arrival of the Macrae letter – to deal with what was expressed as "concerns" with the presence of Pedro Espada at the Soundview facility.  Specifically, Attorney for plaintiffs had become concerned with the string of letters raising concerns about Soundview's financial integrity, the fact that Soundview's many attempts by its own personnel to remedy such concerns went unanswered, Steven Auerbach's statements that Soundview's problems would go away when Pedro Espada does, and Pamela Kurland's statements, in telephone conversations with Soundview's prior counsel, Julie Kass, that Pedro Espada was the source of Soundview's problems.  This outreach, despite one conversation with one attorney from DHHS, was virtually ignored.

43.    It is further to be noted that prior to the January 25, 2012 conference call, both before and after the Macrae letter arrived, Your Affiant called Ms. Pamela Kurland, as counsel for HRSA on numerous occasions to discuss the finality of the HRSA decision making process in the awarding of the §330 grant, to raise the following issues:

- Whether an extension of the grant would be possible due to the fact that the grant was within weeks of expiring, and the transfer of patients and medical records within that time frame was impossible;

- Whether there was a possibility of correcting errors from the grade given to Soundview within the purported "objective review process" (after the receipt of the Macrae letter);

- Whether a hearing would be granted to Soundview for the purpose of disputing the findings within the purported "objective review process";

- What process would exist for transferring patients to another facility (again, raising the issue of whether certain funding would be available for the transfer process);

- Whether the chosen grantee for the §330 grant was actually within the service area of Soundview – thus raising the possibility that the purported "objective review process" erroneously chose a provider outside of the service area;

- Whether grading within the purported "objective review process" actually considered existing doctor-patient relationships (as opposed to treating with physicians where no such relationships exist, in this case, ***__outside of the service area__***).

44. Again, there was no response to this attempted outreach by Ms. Kurland.

### C.    The January 25 Conference Call

45.    On January 25, 2012, a conference call was held on what HRSA claimed would involve the "closing out" process of the §330 grant.  The following participants were included in the conference call on behalf of Soundview: Ezra B. Glaser and Marion Conde Da Silveira, as attorneys for Soundview; Julia Tsien, Soundview's interim Principal Investigator; Phil Valdez, Soundview's Chief Financial Officer; and Alejandro Espada, Soundview's Senior Vice President.  The following participants were included in the conversation on behalf of HRSA:  Lynn Van Pelt, Chief of Atlantic Branch NE Division, HRSA-BPHC, Suganthi Walter, Project Officer Soundview's Section 330 Grant, HRSA Public Health Analyst, Gina Capra, Director Eastern Division, HRSA-BPHC, Tonya Bowers, Director, Office of Policy and Program Development, HRSA-BPHC, Helen Harpold, Chief, Health Services Branch, Division of Grants Management Operations, HRSA, Beverly Dart, of the Department of Health and Services Office of General Counsel, and HRSA's legal counsel Pamela Kurland.

46.    With respect to the issues Plaintiffs' Attorney sought to address, Lynn Van Pelt stated that "there was no process" to correct deficiencies with regard to the grading of Soundview as the grading was done within a purported "objective review process." The notion that the grant was awarded within an "objective review process" was parroted by HRSA personnel on several occasions, as was the fact that this process, within the "pre-award" period, was unappealable.  As Plaintiffs' Attorney repeatedly addressed issues as to whether there was any due process procedure within the HRSA grant process, it was repeated by Ms. Van Pelt that there was no process; another HRSA staffer stated there was "no formal process," and a suggestion was made to send a letter as part of an "informal process" in response to a question from Ms. Julia Tsien.

Specifically, Ms. Van Pelt stated that neither the issue of revisiting the grading within the purported "objective review process," nor any hearing opportunity whatsoever be provided for Soundview.

46.     It was revealed during that telephone conversation that the §330 grant was awarded to Urban Health Plan, Inc., Ms. Paloma Hernandez's organization, located at 1065 Southern Boulevard, in the Bronx.  Your Affiant repeatedly asked the question as to whether any facility associated with that organization was located in the service area of Soundview.  One HRSA staffer stated that by February 1, the chosen grantee would be able to deliver services within the service area.  When the question was again repeated, another HRSA staffer stated that it was not relevant to our discussion; Your Affiant respectfully disagreed, stating that it was an important part of the "close-out process," and the transfer of patients.  Ms. Tsien also affirmatively stated that it was an important part of this process as well, since Urban Health Plan, Inc. was located miles from the service area.  When Your Affiant requested, again after several previous tries, to obtain an answer by stating "yes," "no" or affirmatively informing the individuals on the conference call that the question would not be answered, Ms. Dart stated the phone conversation would not continue if the inquiry went on – prompting Mr. Valdez to request that we proceed to the next topic.

47.    With regard to the issue of whether any further HRSA §330 grant funding or FTCA funds would be provided for Soundview during the close-out process, it was stated by various HRSA personnel that no further funding would be made available from the point that the previous §330 grant funds expire - January 31 of this month.  A notice of grant award dated January 24, 2012 was issued to extend Soundview's project period end date to May 31, 2012 solely to allow for the close out of the grant. Soundview has until February 24, 2012 to develop a plan and work plan for how all 20,000 patient records would have to be transferred and all related close out arrangements for the transition of care would be accomplished. HRSA personnel re-emphasized that no funds were to be provided for any patient care activities after the grant expired and that the malpractice coverage would also end on January 31, 2012.

48.    It is clear, based on the foregoing, that Urban Health Plan, Inc. is not within the service area of Soundview.  It is further respectfully submitted that an emergency has been created by the DHHS in the effort to transfer many thousands of patients to another facility outside of the Soundview service area will cause a major disruption to the medical services of the patients, many of which are physically or financially unable to travel outside the service area.  There is also a very real possibility that other facilities will not be able to absorb the large volume of Soundview's patients.

### V.   CLAIMS

### AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFFS':
### PLAINTIFFS' CLAIM FOR  DAMAGES UNDER THE ADMINISTRATIVE
### PROCEDURE ACT (APA), 5 U.S.C. §702.

49.    The Plaintiffs repeat, reallege and reaffirm each and all of the allegations

numbered "1" through "48" of this Complaint as though fully set forth herein at length.

50.    It is respectfully submitted that the Defendants, specifically, KATHLEEN

SIBELIUS, both individually and as Secretary of the U.S. DEPARTMENT OF HEALTH

AND HUMAN SERVICES, JAMES MACRAE, both individually and as associate

administrator of DEPARTMENT OF HEALTH and HUMAN RESOURCES SERVICES

ADMINISTRATION, SUGANTHI WALTER, both individually and as public health

analyst for HRSA, BRIAN FELDMAN, both individually and as Grant Management

Specialist HRSA, GINA CAPRA, both individually and as Director of the Eastern Bureau

of Primary Health Care for HRSA, LYNN VAN PELT, both individually and as Deputy

Director for the Northeastern Division of HRSA, SHERRY ANGWAFO, both individually

and as Financial Analyst Team Leader of  HRSA, and STEVEN AUERBACH,

individually and as Captain of the NATIONAL HEALTH SERVICE CORPS, a division of

the U.S. Department of Health and Human Services, acting under color of federal law,

acted in concert to deprive the Plaintiffs of an important federal benefit, namely, a

federal grant pursuant to 42 USC 254(b), (§330 of the Public Health Service Act) and a

grant pursuant to the FTCA administered by HRSA for medical malpractice insurance.

51.    That the above-referenced Defendants created a false, farcical and sham

"objective review process" that was specifically intended to deprive the Plaintiffs of the

aforementioned grants.

52.     That the aforementioned Defendants have acted negligently, intentionally and willfully in their systematic efforts to deprive the Plaintiffs of the aforementioned grants, to the Plaintiffs' detriment.

53.     That the aforementioned Defendants acted in bad faith in their systematic efforts to deprive the Plaintiffs of the aforementioned grants.

54.     That based on the foregoing, the Plaintiffs seek monetary damages, in the amount of FIFTEEN MILLION DOLLARS ($15,000,000), both compensatory and punitive, for the acts alleged within the First Cause of Action on behalf of the Plaintiffs.

**<u>AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF PLAINTIFFS:</u>**
**<u>VIOLATION OF THE PLAINTIFFS RIGHTS, UNDER COLOR OF LAW,</u>**
**<u>PURUSANT TO THE U.S. CODE, 28 U.S.C., §1331.</u>**

55.    The Plaintiffs repeat, reallege and reaffirm each and all of the allegations numbered "1" through "54" of this Complaint as though fully set forth herein at length.

56.    Plaintiff states a claim pursuant to the U.S. Code, 28 U.S.C., Section §1331, in that the Defendants, KATHLEEN SIBELIUS, both individually and as Secretary of the U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, JAMES MACRAE, both individually and as associate administrator of DEPARTMENT OF HEALTH and HUMAN RESOURCES SERVICES ADMINISTRATION, SUGANTHI WALTER, both individually and as public health analyst for HRSA, BRIAN FELDMAN, both individually and as Grant Management Specialist HRSA, GINA CAPRA, both individually and as Director of the Eastern Bureau of Primary Health Care for HRSA, LYNN VAN PELT, both individually and as Deputy Director for the Northeastern Division of HRSA, SHERRY ANGWAFO, both individually and as Financial Analyst Team Leader of  HRSA, and STEVEN AUERBACH, individually and as Captain of the NATIONAL HEALTH SERVICE CORPS, a division of the U.S. Department of Health and Human Services, federal agents within the U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, acting under color of federal law, acted in concert to deprive the Plaintiffs of an important federal benefit, namely, a federal grant pursuant to 42 USC 254(b), (§330 of the Public Health Service Act) and a grant pursuant to the FTCA administered by HRSA for medical malpractice insurance.

57.    That the aforementioned Defendants have acted negligently, intentionally and willfully, under color of federal law, in their systematic efforts to deprive the Plaintiffs of the aforementioned grants, to the Plaintiffs' detriment.

58.     That the aforementioned Defendants acted in bad faith, under color of federal law, in their systematic efforts to deprive the Plaintiffs of the aforementioned grants.

59.     That based on the foregoing, the Plaintiffs seek monetary damages, in the amount of FIFTEEN MILLION DOLLARS ($15,000,000), both compensatory and punitive, for the acts alleged within the Second Cause of Action on behalf of the Plaintiffs.

**AS AND FOR A THIRD CAUSE OF ACTION ON BEHALF OF PLAINTIFFS:**
**VIOLATION OF THE PLAINTIFFS RIGHTS, UNDER COLOR OF LAW, PURSUANT**
**TO BIVENS v. SIX UNKNOWN FED. NARCOTICS AGENTS, 403 U.S. 388 (1971).**

60.     The Plaintiffs repeat, reallege and reaffirm each and all of the allegations numbered "1" through "59" of this Complaint as though fully set forth herein at length.

61.     Plaintiff states a claim pursuant to Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), in that the Defendants, KATHLEEN SIBELIUS, both individually and as Secretary of the U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, JAMES MACRAE, both individually and as associate administrator of DEPARTMENT OF HEALTH and HUMAN RESOURCES SERVICES ADMINISTRATION, SUGANTHI WALTER, both individually and as public health analyst for HRSA, BRIAN FELDMAN, both individually and as Grant Management Specialist HRSA, GINA CAPRA, both individually and as Director of the Eastern Bureau of Primary Health Care for HRSA, LYNN VAN PELT, both individually and as Deputy Director for the Northeastern Division of HRSA, SHERRY ANGWAFO, both individually and as Financial Analyst Team Leader of  HRSA, and STEVEN AUERBACH, individually and as Captain of the NATIONAL HEALTH SERVICE CORPS, a division of the U.S. Department of Health and Human Services, federal agents within the U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, acting under color of federal law, acted in concert to deprive the Plaintiffs of an important federal benefit, namely, a federal grant pursuant to 42 USC 254(b), (§330 of the Public Health Service Act) and a grant pursuant to the FTCA administered by HRSA for medical malpractice insurance.

62.     That the aforementioned Defendants have acted negligently, intentionally and willfully, under color of federal law, in their systematic efforts to deprive the Plaintiffs of the aforementioned grants, to the Plaintiffs' detriment.

63.     That the aforementioned Defendants acted in bad faith, under color of federal law, in their systematic efforts to deprive the Plaintiffs of the aforementioned grants.

64.     That based on the foregoing, the Defendants seek monetary damages, in the amount of FIFTEEN MILLION DOLLARS ($15,000,000), both compensatory and punitive, for the acts alleged within the Third Cause of Action on behalf of the Plaintiffs.

**AS AND FOR A FOURTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS:
VIOLATION OF THE PLAINTIFFS RIGHTS TO FREE SPEECH AND FREE
ASSOCIATION UNDER THE FIRST AMENDMENT TO THE U.S. CONSTITUTION**

65.   The Plaintiffs repeat, reallege and reaffirm each and all of the allegations numbered "1" through "64" of this Complaint as though fully set forth herein at length.

66.   That the Defendants, KATHLEEN SIBELIUS, both individually and as Secretary of the U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, JAMES MACRAE, both individually and as associate administrator of DEPARTMENT OF HEALTH and HUMAN RESOURCES SERVICES ADMINISTRATION, SUGANTHI WALTER, both individually and as public health analyst for HRSA, BRIAN FELDMAN, both individually and as Grant Management Specialist HRSA, GINA CAPRA, both individually and as Director of the Eastern Bureau of Primary Health Care for HRSA, LYNN VAN PELT, both individually and as Deputy Director for the Northeastern Division of HRSA, SHERRY ANGWAFO, both individually and as Financial Analyst Team Leader of  HRSA, and STEVEN AUERBACH, individually and as Captain of the NATIONAL HEALTH SERVICE CORPS, a division of the U.S. Department of Health and Human Services, federal agents within the U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, acting under color of federal law, summarily and illegally terminated deprive the Plaintiffs of an important federal benefit, namely, a federal grant pursuant to 42 USC 254(b), (§330 of the Public Health Service Act) and a grant pursuant to the FTCA administered by HRSA for medical malpractice insurance in retaliation for their association with Soundview' founder and former CEO, Pedro Espada, in violation of the Plaintiffs' right to free speech and free association under the First Amendment of the U.S. Constitution.

67.     That the aforementioned Defendants have acted negligently, intentionally and willfully, under color of federal law, in their systematic efforts to deprive the Plaintiffs of the aforementioned grants, in retaliation for their exercise of their rights to free speech and free association under the First Amendment to the U.S. Constitution.

68.     That the aforementioned Defendants acted in bad faith, under color of federal law, in their systematic efforts to deprive the Plaintiffs of the aforementioned grants, under color of law, in retaliation for their exercise of their rights to free speech and free association under the First Amendment to the U.S. Constitution.

69.     That based on the foregoing, the Defendants seek monetary damages, in the amount of FIFTEEN MILLION DOLLARS ($15,000,000), both compensatory and punitive, for the acts alleged within the Fourth Cause of Action on behalf of the Plaintiffs.

**AS AND FOR A FIFTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS:**
**ARBITRARY AND CAPRICIOUS CONDUCT ON THE PART OF THE DEFENDANTS**
**IN VIOLATION OF THE PLAINTIFFS' DUE PROCESS RIGHTS**

70.    Plaintiff repeat and reallege the allegations contained in paragraphs "1" through "69" above as if fully set forth herein.

71.    Plaintiff states a claim under the foregoing statutes and case law in that the Defendants, KATHLEEN SIBELIUS, both individually and as Secretary of the U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, JAMES MACRAE, both individually and as associate administrator of DEPARTMENT OF HEALTH and HUMAN RESOURCES SERVICES ADMINISTRATION, SUGANTHI WALTER, both individually and as public health analyst for HRSA, BRIAN FELDMAN, both individually and as Grant Management Specialist HRSA, GINA CAPRA, both individually and as Director of the Eastern Bureau of Primary Health Care for HRSA, LYNN VAN PELT, both individually and as Deputy Director for the Northeastern Division of HRSA, SHERRY ANGWAFO, both individually and as Financial Analyst Team Leader of  HRSA, and STEVEN AUERBACH, individually and as Captain of the NATIONAL HEALTH SERVICE CORPS, a division of the U.S. Department of Health and Human Services, federal agents within the U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, acting in concert, under color of federal law, arbitrarily and capriciously deprived the Plaintiffs of an important federal benefit, namely, a federal grant pursuant to 42 USC 254(b), (§330 of the Public Health Service Act) and a grant pursuant to the FTCA administered by HRSA for medical malpractice insurance in violation of the Plaintiffs' due process rights, by creating an arbitrary, false, fraudulent and sham process that was purposely created with the purpose of depriving said Plaintiffs of the aforementioned grants.

72.     That the aforementioned Defendants purposely set up the nonappealable "objective review committee" and the findings attendant thereto for the purpose of denying the Plaintiffs a hearing or an opportunity to correct the finding within the "objective review process," in violation of the Plaintiffs' rights under the Fifth and Fourteenth Amendments to the U.S. Constitution.

73.     That the aforementioned Defendants acted in bad faith, under color of federal law, in their systematic efforts to deprive the Plaintiffs of the aforementioned grants, in violation of the Plaintiffs due process rights under the Fifth and Fouteenth Amendments to the U.S. Constitution.

74.     That based on the foregoing, the Defendants seek monetary damages, in the amount of FIFTEEN MILLION DOLLARS ($15,000,000), both compensatory and punitive, for the acts alleged within the Fifth Cause of Action on behalf of the Plaintiffs.

**<u>AS AND FOR A SEVENTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS:
THE DEFENDANTS CONDUCT VIOLATED THE PLAINTIFFS' RIGHT TO EQUAL
PROTECTION BY CREATING A PROCESS DESIGNED TO TREAT THEM
DIFFERENTLY FROM SIMILARLY SITUATED INDIVIDUALS.</u>**

75.     Plaintiffs repeat and reallege the allegations contained in paragraphs "1"

through "74" above as if fully set forth herein.

76.     Plaintiff states a claim under the foregoing statutes and case law in that the Defendants, KATHLEEN SIBELIUS, both individually and as Secretary of the U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, JAMES MACRAE, both individually and as associate administrator of DEPARTMENT OF HEALTH and HUMAN RESOURCES SERVICES ADMINISTRATION, SUGANTHI WALTER, both individually and as public health analyst for HRSA, BRIAN FELDMAN, both individually and as Grant Management Specialist HRSA, GINA CAPRA, both individually and as Director of the Eastern Bureau of Primary Health Care for HRSA, LYNN VAN PELT, both individually and as Deputy Director for the Northeastern Division of HRSA, SHERRY ANGWAFO, both individually and as Financial Analyst Team Leader of  HRSA, and STEVEN AUERBACH, individually and as Captain of the NATIONAL HEALTH SERVICE CORPS, a division of the U.S. Department of Health and Human Services, federal agents within the U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, acting in concert, under color of federal law, knowingly, willingly and recklessly, did violate the Plaintiffs' rights to equal protection of the laws, by knowingly and willfully treating them differently from similarly situated individuals competing for the same contracts, and in creating a purported "objective review committee" with improper motives, and for the specific purpose of depriving the Plaintiffs of an important federal benefit, namely, a federal grant pursuant to 42 USC 254(b), (§330 of the Public Health Service Act) and a grant pursuant to the FTCA administered by HRSA for medical malpractice insurance.

77.     That the aforementioned Defendants purposely set up the nonappealable "objective review committee" and the findings attendant thereto for the purpose of denying the Plaintiffs their rights to equal protection under the law through a sham process, and specifically creating a process where the Plaintiffs' were treated differently from similarly situated individuals.

78.     That the aforementioned Defendants acted in bad faith, under color of federal law, in their systematic efforts to deprive the Plaintiffs of the aforementioned grants, in violation of the Plaintiffs' equal protection rights under the Fouteenth Amendment to the U.S. Constitution.

79.     That based on the foregoing, the Plaintiffs seek monetary damages, in the amount of FIFTEEN MILLION DOLLARS ($15,000,000), both compensatory and punitive, for the acts alleged within the Seventh Cause of Action on behalf of the Plaintiffs.

## AS AND FOR A EIGHTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS: THE DEFENDANTS ACTED IN VIOLATION OF THE PLAINTIFFS RIGHTS, UNDER COLOR OF LAW, PURSUANT TO  42 U.S.C. §1983

80.     Plaintiffs repeat and reallege the allegations contained in paragraphs "1" through "79" above as if fully set forth herein.

81.     Plaintiffs states a claim under 42 U.S.C. §1983 against the state Defendants, CHARLENE FLESZAR, both individually and as Legal Counsel for OMIG, and MATTHEW BABCOCK, both individually and as assistant Medicaid inspector general for OMIG, who summarily and illegally initiated a process that was specifically designed to deny the Plaintiffs an important benefit under the law: namely the receipt of federal and state grants, including New York State Medicaid funds and the aforementioned §330 federal grants administered by HRSA.

82.     That the aforementioned Defendants, acting under color of state law under 42 U.S.C. §1983, engaged in arbitrary and capricious conduct that were purposely designed to deny the Plaintiffs funding in violation of said Plaintiffs rights to free speech and free association under the First Amendment of the U.S. Constitution.

83.     That the aforementioned Defendants, acting under color of state law under 42 U.S.C. §1983, engaged in arbitrary and capricious conduct that were purposely designed to deny the Plaintiffs funding in violation and thwart the previously existing funding mechanism for Soundview, in violation of the Plaintiffs' rights to due process of law under the Fifth and Fourteenth Amendments to the U.S. Constitution.

84.     That the aforementioned Defendants, acting under color of state law under 42 U.S.C. §1983, engaged in arbitrary and capricious conduct that were purposely designed to deny the Plaintiffs funding and thwart the previously existing funding mechanism for Soundview, in violation of the Plaintiffs' rights to equal protection of the law under the 14th Amendment to the U.S. Constitution, in that the said Defendants created a process that was specifically designed to treat the Plaintiffs differently and unequal with similarly situated individuals.

85.     That the aforementioned Defendants acted in bad faith, under color of state law, in their systematic efforts to deprive the Plaintiffs of the aforementioned grants, in violation of the Plaintiffs' rights to free speech and free association under the First Amendment to the U.S. Constitution; the  equal protection rights under the Fouteenth Amendment to the U.S. Constitution.

86.     That based on the foregoing, the Plaintiffs seek monetary damages, in the amount of FIFTEEN MILLION DOLLARS ($15,000,000), both compensatory and punitive, for the acts alleged within the Sixth Cause of Action on behalf of the Plaintiffs.

## AS AND FOR A NINTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS: PLAINTIFFS' PENDENT STATE LAW CLAIMS AGAINST THE DEFENDANTS

87.    Plaintiffs repeat and reallege the allegations contained in paragraphs "1" through "86" above as if fully set forth herein.

88.    Plaintiffs state a claim pursuant to this Court's pendant state law jurisdiction against the private Defendants, PALOMA HERNANDEZ, both individually and on behalf of URBAN HEALTH PLAN, INC., for tortuous interference with the Plaintiffs' right to contract.

89.    Plaintiff further states a claim against the aforementioned Defendants for acting in concert with the state and federal Defendants, who, acting under color of law, set out to deprive the Plaintiffs from important state and federal benefits, namely the aforementioned state and federal grants to which they were entitled.

90.    The Plaintiff further states a claim against the aforementioned Defendants for defrauding the Plaintiffs, who had come to said Defendants, and specifically Paloma Hernandez, for advice and assistance in maintaining their state and federal grants.

91.    That the Defendants, PALOMA HERNANDEZ, both individually and on behalf of URBAN HEALTH PLAN, INC., engaged in "double dealing" as she both provided advice and purportedly supported Soundview, while simultaneously using political contacts and lobbyists to assist her organization in the receipt of the grant.

92.    That the Defendants, PALOMA HERNANDEZ, both individually and on behalf of URBAN HEALTH PLAN, INC., engaged in fraudulent actions and acted in concert with state and federal agents, under color of law, in the effort to deprive Soundview of funding while purporting to act to the benefit of Soundview.

93.     That the Defendant, PALOMA HERNANDEZ, both individually and on behalf of URBAN HEALTH PLAN, INC., breached her fiduciary duties as Director of Region II of the National Association of Community Health Centers  and as the President of Community Health Care Association of New York State to the Plaintiffs by simultaneously "assisting" Soundview in the grant process while simultaneously competing for the same grants, which said Defendants knew would cause the utter disruption of the Plaintiffs' business.

94.     That based on the foregoing, the Plaintiffs seek monetary damages, in the amount of FIFTEEN MILLION DOLLARS ($15,000,000), both compensatory and punitive, for the acts alleged within the Ninth Cause of Action on behalf of the Plaintiffs.

## IV. <u>JURY TRIAL</u>

95.     Plaintiff demands a trial by jury.

**WHEREFORE,** Plaintiff prays for a judgment awarding her compensatory damages, costs, disbursements, reasonable attorneys fees, punitive damages, equitable relief and all other relief to which this Honorable Court deems Plaintiff is entitled to under the applicable federal statutes, and which it deems to be fair, equitable and just.

Dated:          New York, New York
                January 31, 2012

                                        By:     Ezra B. Glaser, Esq. (EG-3953)
                                                CONDE & GLASER, L.L.P.
                                                305 BROADWAY
                                                New York, New York 10007
                                                (212) 385-9300